```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X
                                        :
MIANKANZE BAMBA,                        :
                         Plaintiff,     :
                                        :    11 Civ. 7466 (DLC)
          -v-                           :
                                        :    OPINION & ORDER
U.S. DEPARTMENT OF HOMELAND SECURITY    :
and JOHN ULIANKO, DENNIS MCGOWAN, DAVID :
SUNA, MICHAEL MISCHLER, and THE STATE   :
OF FLORIDA and ERIC ABRAHAMSEN          :
                         Defendants.    :
                                        :
----------------------------------------X
```

Appearances:

For Plaintiff:
Alaba A. Rufai, Esq.
06-26 Guy R. Brewer Blvd.
Jamaica, NY 11433

Francis O. Kadiri
Francis Kadiri, LLC
778 Rays Road, Suite 103
Stone Mountain, GA 30083

For Defendant:
Carina H. Schoenberger
United States Attorney's Office
86 Chambers Street, 3rd Floor
New York, NY 10007

DENISE COTE, District Judge:

Plaintiff Miankanze Bamba ("Bamba") brings this action, pursuant to 42 U.S.C. § 1983, against defendants the United States Department of Homeland Security ("DHS" or "Agency"), John Ulianko ("Ulianko"), Dennis McGowan ("McGowan"), David Suna ("Suna"), Michael Mischler ("Mischler"), the State of Florida ("the State" or "Florida"), and Eric Abrahamsen ("Abrahamsen"). The defendants have moved to dismiss Bamba's complaint pursuant to Rules 12(b)(1), 12(b)(2), and 12(b)(6), Fed. R. Civ. P.  For the following reasons, the defendants' motions are granted.

BACKGROUND

At all relevant times, Bamba was a DHS employee, whose duties included the review and audit of Agency financial accounts and transactions.  Bamba alleges that after he reported suspicious transactions to superiors, DHS officials conspired against him and sought to have his federal employment terminated.  Bamba identifies the DHS officials who allegedly sought to have him removed as Ulianko, McGowan, Suna, and Mischler (the "Individual Federal Defendants").

According to Bamba, the mechanism the Individual Federal Defendants used to retaliate against him and arrange for his removal was a stale Florida arrest warrant issued against Bamba

in 2007.  In February 2010, one of the Individual Federal Defendants placed the warrant in a national crime database and Ulianko, Bamba's DHS superior, directed Bamba to travel to Tallahassee, Florida to appear and address the warrant.  Bamba was arrested on April 9 after voluntarily presenting himself at the Sheriff's Office in Leon County, Florida.

Subsequently, the Individual Federal Defendants actively cooperated with Abrahamsen, a Florida Assistant State's Attorney, in the prosecution of Bamba's case.  Abrahamsen "certified" Bamba's case to the local court's felony division, and caused a writ of capias to be issued to effectuate Bamba's arrest.[1]  Abrahamsen also caused Bamba's mug shot to be posted online.  The Individual Federal Defendants communicated frequently with Abrahamsen in connection with the charges against Bamba, and provided Abrahamsen documentary evidence pertinent to the case.

As a result of the Florida charges, Bamba was initially placed on administrative leave by DHS.  On January 3, 2011, Ulianko suspended Bamba indefinitely from Agency employment. Abrahamsen subsequently traveled to New York to testify before a Merit Board in connection with Bamba's suspension.  The Florida

---

[1] In Florida law, a writ of capias is an arrest warrant that may be issued at the direction of a court or prosecuting attorney. Fla. R. Crim. P. 3.730.

charges against Bamba were dismissed on July 26, however, by the Assistant State's Attorney who had replaced Abrahamsen on Bamba's case.

PROCEDURAL HISTORY

Bamba filed his original complaint in this action on October 21, 2011. Bamba's amended complaint was filed on March 16, 2012. Florida moved to dismiss Bamba's amended complaint on April 16. Abrahamsen and the federal defendants moved to dismiss the amended complaint on April 27. The motion became fully submitted on June 8.

DISCUSSION

I. Federal Defendants

The federal defendants contend that Bamba's constitutional claims against the DHS and Individual Federal Defendants in their official capacities are barred by sovereign immunity. Additionally, the federal defendants argue that the Civil Service Reform Act ("CSRA"), 5 C.F.R. § 1021.191, precludes any Bivens remedy against the Individual Federal Defendants in their individual capacities.

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000).  In reviewing a motion to dismiss under Rule 12(b)(1), the court "must accept as true all material factual allegations in the complaint, but [is] not to draw inferences from the complaint favorable to plaintiffs."  J.S. ex rel. N.S. v. Attica Cent. Schs., 386 F.3d 110 (2d Cir. 2004)(citation omitted).  A district court may consider evidence outside the pleadings when resolving a motion to dismiss for lack of subject matter jurisdiction.  Id.

A. Constitutional Claims against DHS and the Individual Federal Defendants in their Official Capacities

Bamba's constitutional claims against the DHS and the Individual Federal Defendants in their official capacities must be dismissed for lack of subject matter jurisdiction.  "It is axiomatic that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction."  United States v. Mitchell, 463 U.S. 206, 212 (1983).  "Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit."  FDIC v. Meyer, 510 U.S. 471, 475 (1994).

Claims brought against a federal agency or a federal agent in his or her official capacity are effectively claims against the United States and are barred unless immunity is waived. Kentucky v. Graham, 473 U.S. 159, 165-166 (1985); Robinson v. Overseas Military Sales Corp., 21 F.3d 502, 510 (2d Cir. 1994). "[A] suit against a federal employee in his official capacity is a suit against the government and Congress has not waived the government's sovereign immunity . . . from lawsuits based on constitutional claims." King v. Simpson, 189 F.3d 284, 287 (2d Cir. 1999).

In opposition, Bamba argues that in some circumstances a plaintiff may assert a Takings Clause claim directly against the United States. See U.S. Const. amend. V. The Fifth Amendment prohibits the government from "taking private property for public use without just compensation." Palazzolo v. Rhode Island, 533 U.S. 606, 617 (2001). Bamba's complaint does not allege that his private property was taken for public use. The Supreme Court has, under certain circumstances, recognized a property interest in public employment as an entitlement subject to procedural due process protection. See Perry v. Sindermann, 408 U.S. 593 (1972). The property interests protected by the Takings Clause, however, are narrower in scope than those protected by procedural due process, and do not include

entitlements.  See RRI Realty Corp. v. Incorporated Village of Southampton, 870 F.2d 911, 916 (2d Cir. 1989); Scott v. Greenville Cty., 716 F.2d 1409, 1421 & n.20 (4th Cir. 1983).  Bamba fails to identify authority for the proposition that a federal employee has a property interest in his job subject to Takings Clause protection.

B. Bivens Claims

The plaintiff also asserts constitutional claims against the Individual Federal Defendants in their individual capacities.  These claims must also be dismissed.  A plaintiff may not bring § 1983 claims against federal officers since § 1983 requires that the defendant act under color of state law.  See Kingsley v. Bureau of Prisons, 937 F.2d 26, 30 n.4 (2d Cir. 1991).  Nor may Bamba bring a Bivens action against the Individual Federal Defendants.  See generally Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics, 403 U.S. 388 (1971).  "The CSRA represents Congress's comprehensive identification of the employment rights and remedies available to federal civil service personnel." Dotson v. Griesa, 398 F.3d 156, 160 (2d Cir. 2005)(citation omitted).  "[T]he remedial scheme established by the CSRA precludes federal civil service employees from challenging adverse employment decisions through

Bivens actions for money damages." Id. at 168. See also Bush v. Lucas, 462 U.S. 367, 390 (1983)(no Bivens remedy for first amendment retaliation claim in federal employment context).

Bamba's amended complaint alleges that the Individual Federal Defendants retaliated against Bamba for his reporting of financial improprieties in Agency accounts and conspired to have Bamba terminated from Agency employment.  As the amended complaint repeatedly emphasizes, all acts alleged therein were undertaken by the Individual Federal Defendants to further their goal of having Bamba dismissed.  As indicated, however, no Bivens action lies to challenge adverse federal employment actions.

Bamba argues that the Individual Federal Defendants engaged in certain wrongful actions outside the employment context, and that these claims are therefore not precluded by the CSRA.  At their foundation, however, Bamba's claims against the Individual Federal Defendants derive from the context of his employment. Bamba alleges that the purpose of the conspiracy was to have him fired from the DHS.  Moreover, Bamba frames each one of the federal defendants' alleged wrongdoings in the context of its relation to the conspiracy's purpose.  Bamba cites his administrative leave, the suspension of his salary, and the suspension of his access to the DHS financial system.  He also

characterizes the Individual Federal Defendants' monitoring of the Florida criminal charges and cooperation with Abrahamsen as efforts to further the conspiracy to deprive Bamba of his job.

   C. State Law Tort Claims

Bamba's state law tort claims against the DHS and the Individual Federal Defendants must also be dismissed.  The Federal Tort Claims Act ("FTCA") provides a limited waiver of the federal government's sovereign immunity against civil actions for damages.  28 U.S.C. § 1346(b)(1).  Pursuant to the FTCA, "a suit against the United States is the exclusive remedy for a suit for damages for injury or loss of property 'resulting from the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment.'"  Rivera v. United States, 928 F.2d 592, 608 (2d Cir. 1991)(quoting 28 U.S.C. § 2679(b)(1)).  The FTCA also "precludes tort suits against federal agencies."  Id. at 609.

Upon a petition by a defendant federal employee, a court may substitute the United States for the defendant employee if the court finds that the employee was acting within the scope of his office or employment at the time of the incident out of which the claim arose.  28 U.S.C. § 2679(d)(1), (3).  A brief on behalf of the named defendants may serve as such a petition.  B

& A Marine Co., Inv. v. Am. Foreign Shipping Co., Inc., 23 F.3d 709, 715-16 (2d Cir. 1994).

The United States Attorney's Office in this District has certified that the Individual Federal Defendants acted at all relevant times within the scope of their employment. Furthermore, Bamba's amended complaint states repeatedly that the Individual Federal Defendants were at all relevant times acting "as the agent[s], servant[s], and employee[s] of [DHS]". The United States is therefore substituted as party defendant for the Individual Federal Defendants in connection with Bamba's state law tort claims.

The FTCA requires a plaintiff to exhaust all administrative remedies before filing suit in federal court. Celestine v. Mount Vernon Health Center, 403 F.3d 76, 82 (2d Cir. 2005). In order to pursue a claim under the FTCA the plaintiff must have "first presented the claim to the appropriate Federal agency" and that claim must "have been finally denied by the agency in writing." See 28 U.S.C. § 2675(a). The FTCA's exhaustion requirement "is jurisdictional and cannot be waived." Celestine, 403 F.3d at 82. In his opposition papers, Bamba concedes that he has not exhausted his administrative remedies. His tort claims against the United States must therefore be dismissed.

II. State Defendants

Bamba also brings § 1983 and state law tort claims against Florida and Abrahamsen.  Bamba's claims against Florida are dismissed.  A State may not be sued under § 1983.  Will v. Michigan Dep't of State Police, 491 U.S. 58, 66 (1989); Gollomp v. Spitzer, 568 F.3d 355, 366 (2d Cir. 2009).

Bamba's claims against Abrahamsen must also be dismissed, because Abrahamsen is entitled to absolute immunity in connection with all acts described in the complaint. "Prosecutors are generally immune from liability under 42 U.S.C. § 1983 for conduct in furtherance of prosecutorial functions that are intimately associated with initiating or presenting the State's case."  Flagler v. Trainor, 663 F.3d 543, 546 (2d Cir. 2011)(citation omitted).  More specifically, prosecutors enjoy absolute immunity "when acting as advocates and when their conduct involves the exercise of discretion."  Id. at 547.

Bamba's allegations against Abrahamsen concern Abrahamsen's decisions as a Florida Assistant State Attorney to initiate prosecution against the plaintiff, certify the prosecution to the felony division, and seek a writ of capias.  The initiation and continuation of the prosecution of a defendant are fundamentally prosecutorial acts.  The act of certifying Bamba's case to the felony division fell within Abrahamsen's discretion

in his role as prosecutor.  Bamba also makes allegations with respect to Abrahamsen's actions in issuing a writ of capias to compel Bamba's attendance in court to answer the charges against him.  The preparation and issuance of the writ is protected by prosecutorial immunity.  Id. at 548-49.  Thus, each of Abrahamsen's acts constitutes a prosecutorial function for which Abrahamsen is entitled to absolute immunity.  Bamba's claims against Abrahamsen, therefore, must be dismissed.

Bamba also alleges that Abrahamsen made false statements in his testimony at Bamba's federal Merit Board hearing.  Abrahamsen, as a witness in a Merit Board hearing, is entitled to absolute immunity for his testimony.

The common law's tradition of granting witnesses absolute immunity is "a tradition . . . well grounded in history and reason[.]"  Briscoe v. Lahue, 460 U.S. 325, 334 (1983)(citation omitted).  This rule is premised on the idea that, "without such immunity, a witness's apprehension of subsequent damages liability might induce self-censorship, either by making witnesses reluctant to come forward in the first place or by distorting their testimony."  Rolon v. Henneman, 517 F.3d 140, 145 (2d Cir. 2008)(citation omitted).  "Such self-censorship may deprive the finder of fact of candid, objective, and undistorted evidence."  Id. (citation omitted).

Absolute witness immunity extends beyond the context of formal judicial proceedings. In Rolon v. Henneman, the Second Circuit determined that absolute immunity applied to a police officer testifying in a disciplinary hearing, "because the nature of th[e] [proceeding] was materially indistinguishable to that of formal judicial proceedings." Id. at 146. The court observed that the witness in the disciplinary hearing performed "substantially the same function as witnesses in judicial proceedings with nearly identical procedural safeguards: he took an oath, offered testimony, responded to questions on direct and cross-examination, and could have been prosecuted for perjury." Id.

Abrahamsen is entitled to absolute immunity for his Merit Board testimony. "The Merit Systems Protection Board (the Board) is an independent Government agency that operates like a court." 5 C.F.R. § 1200.1. Like witnesses in judicial proceedings, witnesses in Merit Board hearings are administered oaths and subject to questions on direct and cross-examination. http://mspb.gov/appeals/ appeals.htm (follow "Judges Handbook" hyperlink). Since Merit Board hearing witnesses are functionally equivalent to witnesses in judicial proceedings, their testimony is entitled to absolute immunity. For this

reason, Abrahamsen merits absolute immunity for his testimony at the Merit Board hearing.

III. RICO Claims

In the amended complaint, Bamba alleges violations of the Racketeering Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962.  These claims are meritless.  "[A] plaintiff in a civil RICO suit must establish a 'pattern of racketeering activity.'"  Spool v. World Child Int'l Adoption Agency, 520 F.3d 178, 183 (2d Cir. 2008)(citation omitted).  To meet the pattern requirement, the racketeering predicates must be "related and . . . amount to or pose a threat of continued criminal activity."  H.J. Inc. v. Northwestern Bell Tel. Co., 492 U.S. 229, 239 (1989).  A plaintiff can establish continuity through an open-ended or closed-ended theory.  Spool, 520 F.3d at 183.  "To satisfy open-ended continuity, the plaintiff must show that there was a threat of continuing criminal activity beyond the period during which the predicate acts were performed."  Id. at 185 (citation omitted).  "To satisfy closed-ended continuity, the plaintiff must prove a series of related predicates extending over a substantial period of time."  Id. at 184 (citation omitted).  The Second Circuit has "never held a

period of less than two years to constitute a substantial period of time" for closed-ended continuity.  Id. (citation omitted).

Even assuming that all other prerequisites for a RICO claim have been met here, Bamba's RICO claims must be dismissed because he has failed to demonstrate a pattern of racketeering activity.  Bamba has not shown that there is a possibility the alleged criminal activity will continue, and therefore does not satisfy open-ended continuity.  With respect to close-ended continuity, the acts alleged to have been taken by the defendants in the complaint occurred between February 2010 and January 2011.  This time period is not long enough to qualify as substantial.  Thus, Bamba has not alleged a pattern of racketeering activity under an open-ended or a closed-ended theory of continuity.  His RICO claims must therefore be dismissed.

CONCLUSION

The defendants' motions to dismiss are granted. The Clerk of Court shall close this case.

SO ORDERED:

Dated: New York, New York
July 24, 2012

⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯
DENISE COTE
United States District Judge